## In re BRYN-KEN CORPORATION.

## CHICAGO TITLE & TRUST CO. v. BRYN-KEN CORPORATION et al.
Nos. 5701, 5736.

Circuit Court of Appeals, Seventh Circuit.
May 13, 1936.

Joseph Rosenberg, Aaron L. Stein, and Milton A. Gordon, all of Chicago, Ill., for appellant.

Joseph H. Schwartz, Nathan M. Oppenheim, and Samuel Freedman, all of Chicago, Ill., for appellees.

Before EVANS and SPARKS, Circuit Judges, and BRIGGLE, District Judge.

SPARKS, Circuit Judge.

This is an appeal from two orders of the District Court sitting in bankruptcy. The first order was entered November 12, 1935, which allowed appellant the sum of $750 for the services of its attorneys in lieu of its claim for $2000. The second order was entered November 20, 1935, which refused to vacate the order of November 12. These orders arose in a proceeding instituted on June 24, 1935, for a reorganization of the debtor corporation under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207). The sole asset of the debtor was a leasehold estate in Cook County, Illinois, and the only debt recognized was a first mortgage bond issue on that leasehold for $140,000, of which $120,000 remained unpaid. Appellant's claim related to fees for services rendered in a foreclosure proceeding in the Superior Court of Cook County, Illinois, on the mortgage given to secure the issue. The bill for foreclosure was filed on June 7, 1932, but the record does not disclose when the decree of foreclosure and sale was entered. In that decree the state court found that by agreement of the parties thereto, there was due appellant for its solicitors' fees the sum of $2000, which amount the court found and decreed was a subsisting first lien upon the premises involved and upon the rents, issues and profits thereof, and that such lien was prior and superior to the lien of the holders and owners of the unpaid bonds, and to all other liens on that property upon which the mortgage was foreclosed.

In the bankruptcy proceeding, a plan of reorganization was submitted wherein the claims of certain classes of creditors were set forth in accordance with the previous order of the court. Neither the plan nor the classification is disclosed by the record. The plan was approved by the court on October 15, 1935, and in its order there appears the following language:

"All committees, attorneys, appraisers, accountants, depositaries, trustees or other persons claiming allowances of fees or expenses in connection with this reorganization or for any other reason entitled to priority of payment as Class One claimants under the order of August 9, 1935, are hereby directed to file their petitions for such allowances on or before October 29th, 1935, and any parties to this cause wishing to file objections in writing to any of such petitions for allowance, are directed to do so on or before November 4th, 1935.

"The court will examine and pass upon such petitions for allowance of fees, reimbursement and objections thereto as may be filed at a hearing which is hereby set without further notice to any of the par-

ties hereto on November 7th, 1935, and at such time will direct the reorganized company with respect to the payment of such allowances as shall be made by the court."

On October 28, 1935, appellant filed proof of its claim involved herein, which is for the same services referred to in the foreclosure decree.

In its proof of claim in the bankruptcy court, appellant set forth specifically the services of its attorneys for which it claimed allowance. The proof of claim made no reference to the prior allowance of the state court nor to the fact that there had been a decree of foreclosure entered. The only reference to the foreclosure proceedings was that they had been instituted and would have been prosecuted to a decree and sale but for the institution of the bankruptcy proceedings. Appellant's proof of claim in no manner sought to recover upon its prior judgment in the state court, but on the other hand, it asked for an allowance for the fair and reasonable value of the services rendered by its counsel with respect to the institution and conduct of said foreclosure proceedings, and it stated that the usual and customary fee for such services was $2000. The proof of claim contained the following clause: "In filing, asserting and proving this claim, claimant reserves the right for itself, as Trustee, and in its individual capacity, to file its claim and/or petitions for allowances on account of the services herein described as costs in this proceeding or otherwise, in the event it shall be for any reason determined that this claim is not entitled to be allowed as a prior claim under said subsection (1) of Section 77B * * *" It further stated that appellant had not received any security for said debt upon the property of the debtor other than the priority to which claimant is entitled under the terms of said trust deed and under the laws of the state of Illinois and the acts of Congress relating to bankruptcy.

It was under these circumstances that the court, on November 12, 1935, allowed appellant $750 for the services of its counsel. On November 20, 1935, appellant presented its motion to the District Court to modify the order of November 12, 1935. This motion was accompanied by an affidavit specifically setting forth the services performed by its attorneys and urging the reasonableness of the original claim. It further alleged, and for the first time, that the said services had culminated in the completion of said foreclosure proceedings with the entry of a final decree of sale, which decree was attached to the affidavit as an exhibit.

It is under these facts that appellant contends that the decree of foreclosure, said to have been entered more than four months prior to the bankruptcy proceedings, fixed the amount due to the trustee for its attorneys' fees as a definite lien which was res judicata in the bankruptcy court and could only be affected by a plan of reorganization to which two-thirds of the creditors of the same class consented.

We agree with appellees' contention that appellant had its day in court and failed to avail itself of its rights with respect thereto. Certainly, appellant is in no position to urge that the court erred in its first order in not recognizing the validity of the allowance of appellant's claim by the state court in the foreclosure decree. This is apparent because appellant never informed the District Court that such allowance had been made, if indeed it had been made prior to the filing of the petition in bankruptcy, and that the court's attention was never called to this matter until after it had made its first ruling. Appellant had a right to waive its judgment lien if it so desired, and while it may not have been its intention to do so, it was certainly guilty of laches in not informing the District Court of that lien. It is true that in appellant's brief the statement of facts alleges the date of foreclosure to be December 14, 1934, and appellees in their brief admit that appellant's statement of facts is substantially correct, with one exception which is not here material, but the record does not disclose that this evidence was before the District Court. A perusal of the claim convinces us, as it no doubt convinced the District Court, that appellant plainly sought a recovery upon quantum meruit for services rendered, and not upon a judgment lien. After an adverse ruling, we can not say that the District Court was in error in refusing to modify its first order, in order to permit appellant to prosecute its claim upon a different theory.

Section 77B (c) 11 U.S.C.A. § 207 (c) (6) provides:

"Upon approving the petition or answer or at any time thereafter, the judge, in addition to the jurisdiction and powers elsewhere in this section conferred upon him, * * *

"(6) shall determine a reasonable time within which the claims and interests of creditors and stockholders may be filed or evidenced and after which no such claim or interest may participate in any plan, except on order for cause shown, the manner in which such claims and interests may be filed or evidenced and allowed, and, for the purposes of the plan and its acceptance, the division of creditors and stockholders into classes according to the nature of their respective claims and interests."

In Lewith v. Irving Tryst Co. (C.C.A.) 67 F.(2d) 855, 857, the court said:

"So far as we can see, no 'equities of the case' show any 'cause' for the reconsideration of this allowance. As we have said, the petition does not allege that the creditor was ignorant of the amount of property on the premises when the petition for adjudication was filed, or even that he was ignorant of the law of Pennsylvania giving him a priority; he may merely have neglected to assert his rights. * * * It is a firmly fixed doctrine of our jurisprudence that a matter once brought before a court and finally decided, shall not be reopened without good reason. The parties on their day in court are bound to present any facts and arguments then available to them. The very purpose of the proceeding is to settle the dispute; the 'equities of the case' make more for the avoidance of repeated litigation than to excuse the negligence of a party."

We think the District Court's ruling was correct under the ruling in the Lewith Case. See, also, Baldwin Co. v. Darnell, 213 Ill.App. 589; and Wabash Railroad Company v. Barrett, 117 Ill.App. 315.

Both orders of the District Court are affirmed.